## Affidavit in Support of an Application for a Search Warrant

I, Wade M. Brown, being duly sworn, do hereby depose and say:

I am a Criminal Investigator with the Concord, New Hampshire Police Department (CPD), where I have been employed since November 2008. Prior to employment with the Concord Police Department, I was employed as a Police Officer with the New York City Police Department from March 2000 through October 2008. I was assigned as a precinct Detective from April 2006 through October 2008, where I received training in interview and interrogation techniques, evidence collection, fraud and identity theft investigations, and homicide and sexual assault investigations. Since July 2018, I have attended over 800 hours of training in digital forensics, to include a six-week Basic Computer Evidence Recovery Training course sponsored by the Department of Homeland Security, and a four-week Mobile Device Examiner course sponsored by the National Computer Forensics Institute. I have received additional digital forensics training from the Internet Crimes Against Children (ICAC) Task Force, the National White Collar Crime Center (NW3C), and Access Data Digital Investigations. Over the course of my law enforcement career, I have participated in hundreds of felony-level investigations and arrests, to include burglaries, robberies, sexual assaults, shootings, and homicides. I also hold a Bachelor's Degree in Administration of Justice from Rutgers University, and I am certified by the New Hampshire Police Standards and Training Council as a full-time law enforcement officer. In April 2016 and again in March 2021, I was sworn in as a Special Deputy Sheriff with the Merrimack County Sheriff's Office. On October 27, 2021, I was sworn in as a Special Federal Deputy Marshal with the United States Secret Service, and may therefore present applications for federal search warrants pursuant to Federal Rule of Criminal Procedure 41.

That as set forth below, the factual basis of the issuance of this warrant is based upon information obtained from this affiant's personal knowledge, observations, and beliefs, information provided to this affiant by other law enforcement officers, my training and experience, and the training and experience of other law enforcement officers assisting in this investigation. This statement does not contain every fact known to me or other investigators. Rather, it contains material information relevant to determining whether there is sufficient probable cause to believe that the specific crimes identified below have been committed.

As the result of an investigation conducted by the Concord Police Department, I have developed probable cause that violations of 18 U.S.C. § 2252(a)(4)(B) (possession of child sexual abuse images), have been committed by Joshua Pincoske. I further attest that there is probable cause to search the items described in Attachment A for evidence relating to these crimes under investigation

1. **Overview and Initial Involvement by CPD:** In December 2020, investigators from Farmington, NH Police Department began an investigation involving a suspect identified as Joshua Pincoske. Two 17-year-old female juveniles, identified in this statement as Female Juvenile 1 "FJ1" (Born in May of 2003) and Female Juvenile 2 "FJ2" (Born in July 2003), reported inappropriate sexual contact with Pincoske, beginning with online activity and advancing to an in-person incident within the Town of Farmington. It was alleged that Joshua Pincoske paid FJ1 and FJ2 for explicit sexual images transmitted online, as well as for in-person sexual activity inside his vehicle.

2. As part of this investigation, on Wednesday, February 2, 2022, a search warrant was executed at the home of Joshua Pincoske at 38 N. Spring Street in Concord, NH. The warrant was executed by Farmington PD, Concord PD, the Merrimack County Sheriff's Office, and members of the NH

ICAC Task Force. The search warrant authorized the seizure and forensic examination of Pincoske's digital devices and digital storage media.

3. On that date, Pincoske agreed to a voluntary, non-custodial interview with two detectives, during which he admitted that he knew FJ1 and FJ2, identifying them by their names, and confirming that he solicited sexual images from FJ2 in the past. Pincoske further admitted that he met FJ1 and FJ2 in Farmington and touched their bodies while they sat in his vehicle, but stated that he could not recall if he gave them money. Pincoske denied knowing that FJ1 and FJ2 were under the age of 18 at that time, and stated that he broke off contact when he later found out that they were juveniles.

4. During the execution of the search warrant, multiple digital/electronic devices were recovered which were believed to have been used by Pincoske. These devices were subsequently assigned to the Concord PD Computer Crimes Unit for examination and analysis.

5. **Analysis of Devices and Follow-Up Investigation:** In the days that followed the execution of the search warrant, Detectives Stephen Hemming, Thomas Sheveland, Brendan Ryder and I conducted reviews of the data recovered from three of Pincoske's cell phones as well as his HP Laptop computer. In doing so, several relevant observations were made.

6. Within the data recovered from the HP Laptop (Property #22-497-PR), I observed dozens of apparent screenshots showing a male recognized as Joshua Pincoske engaged in video chats with unidentified naked females using the Omegle website. Omegle is a free online chat service that randomly connects users for one-on-one video chat sessions, and it is known to be used extensively for online sexual encounters.

7. Also, on the HP Laptop, I observed eleven images of a white female juvenile identified here as Female Juvenile 3 "FJ3" (Born in April of 2003). FJ3 was positively identified by detectives based on her involvement and agent familiarity with a specific youth athletic program. The metadata for all eleven images indicate they were from the time frame of April to May 2017, at which time FJ3 was 14 years old. Though some of these images were benign in nature, several others were not and established probable cause to support charges of Sexual Assault (contact) and the Manufacturing of Child Sex Abuse Material (CSAM) against Pincoske referenced below in paragraph 10.

8. Det. Ryder later found additional Snapchat communications between FJ3 and Pincoske that spanned several years, from December 2017 through November 2019. Though these communications did not include any overtly inappropriate text, they did indicate that attachments and/or images were involved. These attachments were not readily viewable. Det. Ryder discovered that Pincoske's "nickname" for FJ3's Snapchat contact was, "aprettybrowneye." Based on training and experience in Internet Crimes Against Children cases, I am aware that the term "brown eye" is often used to refer to a person's anus.

9. Within a Samsung S8 smartphone (Property #21-510-PR B), multiple images/videos were recovered showing a white female juvenile identified here as Female Juvenile 4 "FJ4" (Born in March of 2004). FJ4 was positively identified based on information contained in the S8, to include her full name and her telephone number. FJ4's identity was further confirmed by law enforcement officers who were personally familiar with her, as well as by two Juvenile Probation and Parole Officers who had worked with FJ4 in the past.

10. I observed photos and/or videos documenting at least 16 separate sexual acts involving Joshua Pincoske and FJ4 from January 2019 through November 2019 (while FJ4 was 14 and 15 years old). Based on the totality of the images, it was believed that they depicted Joshua Pincoske engaging in sexually explicit conduct with FJ4 while she was less than 16 years old. As such, the images/videos were considered evidence of Aggravated Felonious Sexual Assaults (Pattern Offenses) as well as Manufacturing CSAM.  Based on the evidence recovered involving FJ3 and FJ4, an arrest warrant was obtained and Joshua Pincoske was arrested on February 8, 2022. He has remained incarcerated since that date.

11. Following Pincoske's arrest, the examination of the previously mentioned devices continued to include Pincoske's Samsung S21U smartphone (Property #22-494-PR), an HP Laptop (Property #22-497-PR), a Samsung S8 (Property #22-510-PR-B), a Samsung S10+ (Property #22-992-PR) and an older Samsung Galaxy 5S smartphone (Property # 22-510-PR-A). The data seen within these devices showed that Pincoske engaged in a pattern of memorializing sexual encounters with juveniles by saving still images and videos of those encounters.  In addition to the sexual encounters with FJ4, these images and videos depicting sex acts involving an identified female juvenile (FJ9) whom, based upon messaging over social media, Pincoske appears to have met for a sexual rendezvous in Massachusetts that occurred on or about November 12, 2021.

12. On October 24, 2022, Pincoske was indicted by the federal grand jury seated in Concord, New Hampshire, for thirteen violations of federal law, including production of child pornography in violation of 18 U.S.C. § 2251(a) (involving both FJ4 and FJ9), distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), transportation of child pornography, enticement of a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b) (involving FJ9), and possession of child pornography.

13. Between November 22, 2022 and December 14, 2022, CPD received two letters from an inmate at Merrimack County House of Corrections.  The content of these two letters was not identical, but similar and consistent.  The letters were written by a man who provided his full name (hereafter SOI), who identified himself as a "federal inmate" who had been recently sentenced.  The SOI stated that a man SOI knew as Joshua Pincoske had divulged to him that he (Pincoske) had made a "sex tape" with a "14-year-old freshman female" when Pincoske was a senior in high school.  The SOI alleged that Pincoske also brought this "VHS" tape to his college, which SOI specified was "Colby Sawyer."  SOI advised that Pincoske had reminisced that he had returned to his college dorm one day to find his roommate and friends watching the video.  Pincoske stated his friends had "high-fived" him in response to seeing the video.  SOI stated the VHS tape was stored at Pincoske's residence, in the attic, in a box of other VHS tapes.  SOI clarified that the residence was now in the name of Pincoske's ex-wife Hilary Pincoske, and that Pincoske had described the residence as "adjacent" to the Concord Police Department.  SOI also stated that Pincoske had filmed the sexual encounter with the 14-year-old with a video recorder that Pincoske had borrowed from his high school, and that SOI was unsure if the 14-year-old female was aware she was being recorded.

14. In one of the letters, SOI provided Pincoske's birthday (accurately) and stated that Pincoske and his wife Hillary had divorced so that "all his assets "could be put in Hillary's name in the event Pincoske was "sued or fined."

15. Based upon my knowledge of the investigation of Joshua Pincoske, including information provided to me by CPD Det. Ryder, and due to the fact that SOI provided his name to law

enforcement and the information was provided without any offer of or promise of benefit to SOI, I find the information provided by SOI to be credible.

16. On December 16, 2022, CPD Det. Ryder and CPD Det. Carter served Hillary Pincoske (hereafter "Hillary") with a federal grand jury subpoena directing her to appear before the grand jury on January 9, 2023, and produce to the grand jury any and all VHS tapes that were then stored in her attic at 38 N. Spring Street in Concord, NH. Hillary indicated she would prefer to provide the VHS tapes immediately in lieu of the appearance, and agreed to escort the detectives to the attic. Hillary then escorted Detectives Ryder and Carter to the attic and pointed out an area where Joshua Pincoske had stored many of his older personal items. Among these items were containers of cassette tapes, CD organizers, and sports memorabilia. Additionally, there was a small white plastic crate that contained multiple VHS tapes. Detective Carter then photographed the crate and general area before Detective Ryder took custody of the VHS tapes.

17. Prior to leaving the residence, the tapes were counted and Hillary was provided with a property receipt. Twenty tapes in total were taken, 18 of which were full-sized VHS tapes and 2 of which were smaller VHS-C tapes. *[Note: It was later learned that one of the believed-to-be full-sized tapes was in fact an adapter to play the VHS-C tape. Therefore, the total number of tapes ended up being nineteen.]*

18. After counting the tapes and completing the property form, Detectives Ryder and Carter returned to CPD headquarters, where the tapes were later logged into evidence as Property # 22-6823-PR.

19. On February 6, 2023, Det. Ryder received a phone message from Hillary alerting him to the fact that she had found another bin of VHS tapes. Hillary advised that these, too, were located in the attic and that she found them as she was cleaning the attic out. Later that morning, Det. Ryder and Det. Hemming went to Hillary's home at 38 N. Spring St. to collect the tapes, as Hillary indicated that she wished to surrender them to investigators.

20. Upon returning to CPD with the tapes, Det. Ryder transferred the tapes from the large plastic bin in which they were found into two cardboard boxes – one large, one small. The large box contained 101 VHS tapes and was logged as Property #23-639-PR. The smaller box contained 9 VHS tapes and was logged as Property #23-641-PR.

21. **Characteristics Common to Individuals Who Produce, Receive, Distribute, Possess, and Access Child Sexual Abuse Material (CSAM)**. Based on my training and experience, I know that certain characteristics are common to individuals who produce, receive, distribute, possess, and access CSAM. Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have while viewing children engaging in sexual activity or in sexually suggestive poses. Such events may involve viewings in person, in photographs, or in other visual media, or consumption of literature describing such activity. Such individuals frequently collect CSAM material in a variety of formats and often maintain such material at their residence or in a secure location, either physically or digitally. Individuals who have a sexual interest in children often use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

22. Based on the foregoing, there is probable cause to believe that 18 U.S.C. § 2252(a)(4)(B) (possession of child sexual abuse images), has been violated, and that evidence, fruits and

instrumentalities of the offense, will be found in the VHS tapes obtained from Hillary Pincoske, and listed in Attachment A.  I respectfully request that this Court issue a search warrant authorizing the examination of the items described in Attachment A, to be searched as set forth in Attachment B.

/s/ Wade M. Brown
TFO Wade M. Brown, USSS

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 41, and affirmed under oath the contents of this affidavit and application.

Date: Apr 20, 2023

Time: 4:22PM

Daniel J. Lynch
United States Magistrate Judge

## **ATTACHMENT A**

1. 17 VHS tapes and 2 VHS-C tapes logged into evidence at Concord Police Department as Property # 22-6823-PR.
2. 101 VHS tapes, into evidence at Concord Police Department as Property #23-639-PR.
3. 9 VHS tapes, into evidence at Concord Police Department as Property #23-641-PR.

## **ATTACHMENT B**

All data related to violations of 18 U.S.C. § 2252(a)(4)(B) (possession of child sexual abuse images), including the following:

    a.   Images and videos of suspected child sexual abuse.